## BARNARD vs. BACKHAUS, imp.

*November 28, 1879 — July 7, 1881.*

*Gaming grain contracts.*

1. To uphold a contract in writing for the sale and delivery of grain at a future day, for a price certain, it must affirmatively and satisfactorily appear that it was made with an actual view to the delivery and receipt of the grain, and not as a cover for a gambling transaction.
2. Where some of the transactions between the parties which enter into the consideration of a note and mortgage, are mere gaming transactions, they render the whole security void.
3. A note given by a principal to his broker for services rendered and moneys advanced in making and settling gambling grain contracts, is void.

    R. S. 1858, ch. 169, sec. 16; Laws of 1858, ch. 117, sec. 6; Tay. Stats., p. 1881, § 16, and p. 1892, § 70.

APPEAL from the County Court of *Milwaukee* County.

The complaint alleged that the defendant *Backhaus* made and delivered his promissory note for the sum of $1,000 to the defendants Bartlett and Mohr, then being partners under the firm name of Zinkeisen, Bartlett & Co.; that said firm afterwards indorsed the note to one E. Seckel, for a valuable consideration; that said E. Seckel, for a valuable consideration, indorsed said note to the plaintiff, before the same became due, and plaintiff is now the owner and holder thereof; and that no part thereof has ever been paid, and there is now due from the defendants to the plaintiff the said sum of $1,000 and interest.

The answer of the defendant *Backhaus* denied that said Zinkeisen, Bartlett & Co., for a valuable consideration, indorsed said note to said Seckel, or said Seckel to the plaintiff, before maturity, and averred that such indorsements, if any, were merely colorable, in order to prevent this defendant from setting up a defense to said note. It further alleged that the said note, with three others, was given to said Zinkeisen, Bartlett & Co. upon the following and no other consideration, to wit, in settlement of balances stated by said firm against this

defendant for differences and losses in gambling contracts in grain made by said firm with this defendant and with others at his request, which contracts made by said firm were in violation of the statute of gaming, and were false and feigned, and by which they undertook in form to buy and sell grain for and with this defendant, without intending thereby either to receive or deliver said grain, but solely to wager in the market prices of grain at the Chamber of Commerce, intending not to receive or deliver the grain, but to pay or receive the difference between the prices in the contracts and the market rate, whichever way the same should be; and in which contracts said Zinkeisen, Bartlett & Co. pretended to this defendant that they had lost the balances in the statements set forth.

A jury having been waived, the cause was tried by the court. The view taken by this court of the evidence given upon the trial, and the findings of the county court, sufficiently appear in the opinion.

From a judgment in favor of the plaintiff, the defendant *Backhaus* appealed.

For the appellant there was a brief by *E. Mariner* and *Frisby, Weil & Barney*, and oral argument by *Mr. Mariner*, *Mr. Frisby* and *I. C. Sloan:*

If the intention of the parties to the transactions was, that no grain was actually to be delivered or received, but the differences in price only were to be paid on the one side and received on the other, at the maturity of the contract or before, the contracts were gambling contracts, in the nature of wagers on the rise and fall of the price of grain in the market between the time of the pretended purchase and the supposed time of delivery, and were therefore void. *Pickering v. Cease,* 79 Ill., 328; *In re Green,* 15 Bankr. Reg. Rep., 198; *Lyon v. Culbertson,* 83 Ill., 33; *S. C.,* 25 Am. Rep., 349; *Cassard v. Hinman,* 1 Bosw., 207; *Ex parte Young,* 6 Biss., 53; *Fareira v. Gabell,* 89 Pa. St., 89; *Kirkpatrick v. Bonsall,* 72 Pa. St., 155; *Brua's Appeal,* 55 id., 294; *Rumsey v. Berry,* 65 Me.,

570; *Maxton v. Gheen*, 75 Pa. St., 166; *Clarke v. Foss*, 7 Biss., 540; *Gregory v. Wendell*, 39 Mich., 337. The commissions claimed by Zinkeisen, Bartlett & Co. as part of the consideration of the notes, cannot avail to render them valid. *Lyon v. Culbertson*, 25 Am. Rep., 349; *Steers v. Lashley*, 6 Term, 61; *Mosher v. Griffin*, 51 Ill., 184; *In re Green*, 15 Bankr. Reg. Rep., 198. Sec. 6, ch. 117, Laws of 1858 (Tay. Stats., 1892, § 70), is more comprehensive than sec. 19, ch. 169, R. S. of 1858, and is a complete revision of the law upon that subject. *Lewis v. Stout*, 22 Wis., 234; *Moore v. Railroad Co.*, 34 id., 173; *Oleson v. Railway Co.*, 36 id., 383; *State v. Campbell*, 44 id., 529. So far as there is any conflict between them, the earlier act is repealed. *Simmons v. Bradley*, 27 Wis., 689; Tay. Stats., 1895, § 89. Under these statutes, the note in suit is absolutely void and not merely voidable; and it is therefore immaterial whether or not the plaintiff is a *bona fide* holder. *Austin v. Burgess*, 36 Wis., 186; *Widoe v. Webb*, 5 Am. Rep., 664; *Bayley v. Taber*, 5 Mass., 292; *Gorsuth v. Butterfield*, 2 Wis., 237; Edwards on Bills & Notes, 337. Irrespective of statute the note was void, because the transactions out of which it arose were contrary to public policy. *Melchoir v. McCarty*, 31 Wis., 252; *Waitzfelder v. Kahnweiler*, 56 Barb., 300; *O'Hara v. Carpenter*, 23 Mich., 410.

For the respondent there was a brief by *Carpenter & Smiths*, and oral argument by *Winfield Smith*. They argued, among other things, that a contract for the sale of goods to be delivered at a future day, is not invalidated by the circumstance that at the time of the contract the vendor neither has the goods in his possession, nor has entered into any contract to buy them, nor has any reasonable expectation of becoming possessed of them by the time appointed for their delivery, otherwise than by purchasing them after making the contract. *Hibblewhite v. M'Morine*, 5 M. & W., 462; *Porter v. Viets*, 1 Biss., 177; *McIlvaine v. Egerton*, 2 Robertson, 422; *Tyler*

Barnard vs. Backhaus, imp.

*v. Barrows*, 6 id., 104; *Stanton v. Small*, 3 Sandf. S. C., 230; *Logan v. Musick*, 10 Ch. L. N., 73; *Rumsey v. Berry*, 65 Me., 570; *Cassard v. Hinman*, 1 Bosw., 207; *Wolcott v. Heath*, 78 Ill., 433; *Bigelow v. Benedict*, 70 N. Y., 202; *Smith v. Bouvier*, 70 Pa. St., 325; *Appleman v. Fisher*, 34 Md., 540; *Clarke v. Foss*, 7 Biss., 540, 552; *Gregory v. Wendell*, 39 Mich., 337. To avoid a contract on the ground that it is a wager, it is essential that the illegal purpose be common to both parties. The contract is not a wager if either party understands that he is buying or selling in conformity with its express terms. *Cassard v. Hinman*, *Rumsey v. Berry*, supra; *Frost v. Clarkson*, 7 Cow., 24; *Ex parte Young*, 6 Biss., 53; *Brua's Appeal*, 55 Pa. St., 294; *Grizewood v. Blane*, 73 E. C. L., 538; *Clarke v. Foss*, 7 Biss., 540, 552; *Pickering v. Cease*, 79 Ill., 328; *Pixley v. Boynton*, id., 353; *Lyon v. Culbertson*, 83 id., 34; *Sawyer v. Taggart*, 18 Am. Law Reg., 222; *Kingsbury v. Kirwan*, 6 Cent. L. J., 228; *Gregory v. Wendell*, 39 Mich., 337; *Yerkes v. Salomon*, 11 Hun, 471. The rule which avoids a gaming contract in an action between the principals, has no application to a contract to repay money lent or advanced to enable the loser to pay gambling losses, although the entire nature of the transactions be fully known to the lender. Such loans are valid. It is only loans of money intended to be staked on a bet about to be made, which the law will not uphold. *Jones v. Sevier*, 1 Litt., 50; *Greathouse v. Throckmorton*, 7 J. J. Marsh., 16; *Faikney v. Reynous*, 4 Burr., 2069; *Farmer v. Russell*, 1 Bos. & Pul., 296; *Armstrong v. Toler*, 11 Wheat., 258; *Petrie v. Hannay*, 3 Term, 418; *Pawle v. Gunn*, 4 Bing. N. C., 445; *McKinnell v. Robinson*, 3 M. & W., 434. This principle is applied in suits brought by the broker in whose name the void contract was made, against his principal, and the broker is entitled to recover back the money lost and paid by him. *Lehman v. Strassberger*, 3 Chicago Leg. News, 134; *S. C.*, 2 Woods, 554; *Durant v. Burt*, 98 Mass., 161; *Jessopp*

*v. Lutwyche*, 10 Exch., 614; *Rosewarne v. Billing*, 109 E. C. L., 316; *Thacker v. Hardy*, 18 Am. L. Reg., 254; *Knight v. Cambers*, 15 C. B., 562; *Gilbert v. Gaugar*, 10 Ch. L. N., 340; 7 Biss., 553; 9 Cent. L. J., 61.

The cause was determined June 23, 1880, and the following memorandum of the grounds of the decision was filed at that time:

PER CURIAM. — Contracts in writing for the sale and delivery of grain at a future day, for a price certain, made with a *bona fide* intention to deliver the grain and pay the price, are valid in law; but when such contracts are made as a cover for gambling, without intention to deliver and receive the grain, but merely to pay and receive the difference between the price agreed upon and the market price at such future day, they come within the statute of gaming, and are void in law. To uphold such a contract it must affirmatively and satisfactorily appear that it was made with an actual view to the delivery and receipt of the grain, and not as an evasion of the statute of gaming, or as a cover for a gambling transaction. In the present case it sufficiently appears that at least some of the transactions between the parties, which enter into the consideration of the note and mortgage in suit, were mere gaming transactions of this character, were void in themselves, and taint the whole security, which is, therefore, absolutely void.

The complaint should have been dismissed.

Judgment reversed, and cause remanded with directions to the county court to dismiss the complaint.

The respondent moved for a rehearing; and the time for filing an argument on the motion was extended by order until after a fuller opinion should be filed or a further order made by the court. The following opinion was filed July 7, 1881:

COLE, C. J. There can be no doubt that a contract in writing for the sale and delivery of wheat, or any other commod-

ity, at a future day, for a stipulated price, which is made with a *bona. fide* intention on the one hand of delivering the property, and on the other of receiving and paying for it, is perfectly valid. Such contracts are constantly made in legitimate transactions, and are unobjectionable in law. As was observed by the learned counsel for the plaintiff, a person intending to ship wheat, or intending to manufacture it into flour, or who is under obligations to deliver it in other markets, may find it to his advantage, or may deem it for his advantage, to purchase in advance of the time he actually needs the grain for use. When there is an impression that the price of a commodity is likely to rise, dealers in that commodity will make these time contracts, as they are called, in order to profit by the anticipated rise. Persons may and do purchase wheat in advance because they believe there will be a rise of price in the markets of the world, in consequence of scarcity, or some unusual demand. They may and do speculate in regard to future prices of this and other commodities, oftentimes, as has been said, exhibiting in their speculations great forecast and ability, and much knowledge of business affairs; and, so long as their engagements are entered into with the intention that the subject matter of the contract shall be delivered and received in good faith, courts uphold their agreements.

The law upon this subject is clearly and well stated in *Kirkpatrick v. Bonsall*, 72 Pa. St., 155; *Rumsey v. Berry*, 65 Me., 570; *Gregory v. Wendell*, 39 Mich., 337, and other cases to which we were referred on the argument; and the views there expressed accord with common sense and the ordinary course of business transactions. As was remarked by Mr. Justice AGNEW, in the first case: "We must not confound gambling, whether it be in corporation stocks or merchandise, with what is commonly termed 'speculation.' Merchants speculate upon the future prices of that in which they deal, and buy and sell accordingly. In other words, they think of and weigh — that is, speculate upon — the probabilities of the coming market,

and act upon this lookout into the future in their business transactions; and in this they often exhibit high mental grasp and great knowledge of business and of the affairs of the world. Their speculations display talent and forecast, but they act upon their conclusions and buy or sell in a *bona fide* way." And the law does not condemn such transactions, providing the intention really is that the commodity shall be actually delivered and received when the time for delivery arrives. Consequently, as claimed by counsel, no legal objection exists to such time contracts, which are to be performed in the future by the actual delivery of the property by the vendor, and the receipt and payment of the price by the vendee, if the contract is in writing; and it is also true, as stated by him, that a contract for the sale of goods to be delivered at a future day is not invalidated by the circumstance that, at the time the contract is made, the vendor neither has the goods in his possession nor has entered into an agreement to buy them. A party may go into the market and buy the goods which he has agreed to sell and deliver. Therefore, a contract to deliver at a future day is not necessarily a wagering or gambling contract. But when such a contract is made as a cover for gambling, without any intention to deliver and receive the grain, but merely to pay and receive the difference between the price agreed upon and the market price at such future day, then it comes within the statute of gaming, and is void in law.

Courts, in the main, are in accord in regard to these legal principles. If any diversity of views is found to exist, it is rather in the application of the law to the particular facts than as to the law itself. Wagering contracts are generally — almost universally — condemned on some ground, either as being in violation of a positive statute, or void as against sound public policy. Whenever the elements of a wagering contract are found to enter into a transaction, it is condemned as illegal. But it is the manifest duty of courts to scrutinize

closely these time contracts, and determine whether they were really intended by the parties to be what their language imports — real contracts for the future sale and delivery of grain,— or whether, in fact, they were mere bets or wagers on its price at some distant day.   It will not do to attach too much weight or importance to the mere form of the instrument, for it is quite certain that parties will be astute in concealing their intention, and the real nature of the transaction, if it be illegal.   It may safely be assumed that parties will make such contracts valid in form; but courts must not be deceived by what appears on the face of the agreement.   It is often necessary to go behind or outside of the words of the contract — to look into the facts and circumstances which attended the making of it—in order to ascertain whether it· was intended as a *bona fide* purchase and sale of property, or was only colorable.   And to justify a court in upholding such an agreement, it is not too much to require a party claiming rights under it to make it satisfactorily and affirmatively appear that the contract was made with an actual view to the delivery and receipt of grain, not as an evasion of the statute against gaming, or as a cover for a gambling transaction.   Especially should this be the rule in this state, where there is a statute which expressly declares that " all wagers, bets or stakes made to depend upon any race, or upon any gaming by lot or chance, or upon any bet, chance, casualty or unknown or contingent event whatever, shall be unlawful.   All contracts for or on account of any money or property or thing in action so wagered, bet or staked shall be void."   Section 16, ch. 169, Tay. Stats.   Also there is the further provision which enacts that all promises, notes, bonds or other contracts, mortgages or other securities, *when the whole or any part of the consideration of such promise, note, conveyance* or security shall be for money or other valuable thing whatsoever won or lost on any game or wager, or for the repayment of money lent or advanced at the

time of any game, bet or wager, for the purpose of being betted or wagered, shall be absolutely void and of no effect. Section 70, ch. 169.

Now, it sufficiently appears from the evidence in the case that at least some of the transactions between the parties, which enter into the consideration of the note in suit, were gaming transactions directly condemned or prohibited by these statutory provisions, and that the whole security is tainted by them. They were contracts to pay the difference between the price of wheat at the time the contracts were made, and the price at a subsequent time. That feature or element in these contracts renders them essentially gaming transactions, which are illegal and void. It seems to the court idle to deny that this was the character of some of the transactions out of which the note had its origin. It is true, the learned county court found as facts established by the evidence, that the defendant *Backhaus* employed his co-defendants, Bartlett & Mohr, who were commission merchants in the city of Milwaukee, to buy and sell grain as his factors; that such factors, in making such sales and purchases, were obliged to contract in their own names and to become personally liable to pay for such wheat as they might agree to buy, and to deliver such grain as they agreed to deliver; that all such grain was bought and sold on written contracts, by which the seller had the option to deliver the grain specified therein in a subsequent month named, and on such delivery the purchaser was to pay the specified price; that at the time these various contracts were made there was no understanding or agreement that the delivery of the grain or the payment of the price should be waived or forgiven; that at the time *Backhaus* so employed the other defendants to buy and sell grain for him, he understood that no actual wheat was to be delivered on the contracts which they should make in pursuance of his instructions, but that Bartlett & Mohr did not so understand, nor did they at any time so inform *Backhaus*, nor did they suppose that *Backhaus* so

intended; but they did intend to sell for him (when so instructed) actual wheat, to be delivered by themselves according to the terms of the contracts which they made, such delivery to be made as the holders of such contracts might agree at the time of performance, either by warehouse receipts or by other contracts or orders for the delivery of grain of like character, grade and amount.

I have had some difficulty in arriving at the same conclusion upon the evidence as that reached by my brethren. While I think the weight of testimony tends to disprove the finding, or implication in the finding, of the court below, that when Bartlett & Mohr made contracts for *Backhaus* to sell and purchase wheat for him, they did so with the *bona fide* intention of delivering the grain, or receiving the same and paying the price, when the time for fulfiling the contract arrived; yet I am not so clear upon that point as I desire to be, and therefore was disposed to reverse the judgment and give the parties the further opportunity to try that question. But all my brethren who heard the argument and participated in the decision (including the late chief justice), think that it clearly appears that some of the transactions between the parties, which enter into the consideration of the note, were gambling transactions, and that the judgment should be reversed and the complaint dismissed. I have concluded to defer to their views upon the facts of the case.

It must be admitted that there are many facts and circumstances attending the making of some, if not all, the contracts in question, which warrant the inference that none of the parties regarded them as real contracts for the sale and purchase of wheat — that none of the parties intended there should be an actual delivery and receipt of the grain, but that it was understood the contracts would be kept and performed by merely paying or receiving the difference between the price of wheat agreed upon and the market price at a future day. In other words, according to the price of wheat on a future day

the parties should respectively gain or lose. There can be no doubt that contracts of that character are gambling transactions, condemned by positive statute, and of course illegal. The authorities cited on the briefs of counsel on both sides show the light in which such transactions are regarded by the courts, and that they are deemed essentially wagering contracts. I do not feel called upon to discuss in detail the evidence which supports the conclusion at which the court has arrived. It is sufficient to say that the court deems it clearly and satisfactorily proven that in respect to some of the transactions none of the parties intended an actual sale and purchase of wheat, "but that the whole thing was to be settled by the payment of differences." CRESSWELL, J., in *Grizewood v. Blane*, 73 Eng. C. L., 526. Such transactions are clearly gambling ones.

But it is claimed by counsel for the plaintiff, that the rule which avoids a gaming contract in an action between the principals has no application to this note, which was given by *Backhaus* to his factors, Bartlett & Mohr, for cash advanced by them, and services rendered in making and settling the contracts in question. We have referred to the statute which expressly declares all wagering contracts unlawful; also to the provision which makes any note or mortgage, where the whole or any part of the consideration thereof was for money lost or staked on any wager, or for the repayment of money lent or advanced for the purpose of being wagered, absolutely void. Now, what Bartlett & Mohr were employed to do — what the evidence shows they did do,— was to enter into these gaming contracts for *Backhaus*. They were engaged equally with him in the transaction of illegal business; and the fact that they were executing the orders of their principal does not render their conduct in the matter any the less blameworthy. All were engaged in the furtherance of illegal objects — making contracts which were unlawful; consequently a note given for money which they paid in the settlement of their contracts is tainted with illegality.

A very satisfactory answer to the argument of counsel on this point is given by Judge HOPKINS *(In re Green,* 7 Bissell, 338), in the following language: "They advanced the margins at the time to make the gaming contract, and without their aid in that respect the contracts would not have been made. So, if these contracts are gaming contracts, they must be held to have advanced the money for margins to make them, and their claim for repayment falls within the prohibited class mentioned in the act. They made the illegal contracts, and advanced the money required to give them colorable validity. To take their case out of the statute would be establishing a most flagrant evasion of its provisions." Page 342. We may add that in this case it would give validity to a contract which the statute declares shall be absolutely void. On this point we have carefully examined, among other cases, that of *Thacker v. Hardy,* Law Rep., 4 Q. B. Div., 685, which was strongly relied upon by counsel to show that the note in suit was valid. That was an action brought by a broker against his principal for indemnity against liabilities incurred by the broker in buying and selling stocks and shares upon the stock exchange for the defendant by his authority. It seems to me that the judges in that case draw a very fine sight, and are quite astute in finding reasons to uphold the contract, and to establish the proposition that it did not come within the meaning of 8 and 9 Vict., c. 109, § 18. They do reach the conclusion, upon the facts found by the trial judge, that there was no gaming or wagering in the contract; that the bargains made by the plaintiff upon behalf of the defendant were what they purported to be; that they gave the vendor the right to call upon the broker, or his principal, to take the stock sold, and gave the broker the right to call upon the vendor to deliver it. But the evidence in this case shows that that was not the intention of the parties to the contracts in question; that, whatever form these engagements assumed, neither party actually intended to sell and deliver or buy and pay for the wheat specified, but

Barnard vs. Backhaus, imp.

only meant to call for and pay the difference between the contract price and the price at a future day.

Much was said on the argument in regard to the course of business or method of dealing in grain in the chamber of commerce in Milwaukee, and the manner in which contracts for the sale and purchase of that article were performed or adjusted by its members. It is not necessary to go into any discussion of those matters now, nor express any further opinion than we have already as to the validity of those transactions. We merely say that we suppose contracts in writing entered into by the members of the chamber of commerce for the sale and delivery of grain at a future day, for a price certain, which are made with a *bona fide* intention on the one hand to deliver and on the other to receive and pay for the grain, are valid in law. "But such a contract entered into without an intention of having any wheat pass from one party to the other, but with an understanding that at the appointed time the purchaser is merely to receive or pay the difference between the contract and the market price, is another thing, and such as the law will not sustain." *Rumsey v. Berry, supra.* It does not matter what form the parties give their contracts; unless it appears affirmatively and satisfactorily that they were made with an actual view of the delivery and receipt of the grain, and not as an evasion of the statute of gaming or as a cover for a gambling transaction, they cannot be upheld.

It follows from these views that the judgment of the county court must be reversed, and the cause remanded with directions to dismiss the complaint.

*By the Court.*— So ordered.

The motion for a rehearing was afterwards withdrawn.