BENNETT and another v. COVINGTON.[1]

(*Circuit Court, E. D. North Carolina.* December 12, 1884.)

1. CONTRACTS—GAMBLING—BURDEN OF PROOF.
   The burden of proof is upon the defendant to show that a contract is void under the act against gambling.

2. SAME—PRINCIPAL AND AGENT.
   An order to operate in cotton futures includes an assumption on the part of the principal of all losses legitimately incurred and paid by the agent in the ordinary and known exercise of his agency.

3. SAME—AGREEMENT OF THE PARTIES—TEST OF ILLEGALITY—EVIDENCE.
   In order to establish the illegality of a contract for the future delivery of cotton, as being a wager, it is necessary to show that the real intent of all the parties at the time of entering into the contracts was merely to speculate in the rise or fall of prices, and that the goods were not to be delivered, but that one party was to pay to the other the difference between the contract price and the market price of the goods at the date fixed for executing the contract.

[1] Reported by J. W. Hinsdale, Esq., of the Raleigh, North Carolina, bar.

**4. SAME—EVIDENCE—TEST OF ILLEGALITY.**

 The illegality of a cotton future contract cannot be shown by proving the usual custom of persons speculating in such contracts, or a general expectation or understanding that such contracts were to be settled without an actual delivery of cotton. Such evidence by itself should be withdrawn from the jury.

The plaintiffs sued the defendant for a balance due by account, and the answer of the defendant sets up that the balance arose out of contracts for gambling in cotton futures. The plaintiffs were commission merchants, doing business in New York city, and members of the New York Cotton Exchange. The defendant was a country merchant, doing business in Wilmington, North Carolina. During the season the defendant shipped 126 bales of cotton to the plaintiffs, which were sold for account of defendant. From time to time the defendant ordered the plaintiffs, by telegraph or letters, to buy for him "100 bales, February;" "100 bales, April;" "300 bales, May," etc.; and would instruct them to "sell to cover" a corresponding number of bales deliverable at the same times. The last contracts (for 500 bales purchased) were allowed to mature, and notices of delivery were served upon the plaintiffs, when they were obliged to receive the cotton or find some one else to do so, which they did by at once making a corresponding contract in the cotton exchange with a member of the exchange, and transferring the notices of delivery to him. The last holder of the notice of delivery, upon presenting it to the issuer, received the cotton upon warehouse order. The plaintiff Aubrey Bennett testified that these contracts were all made on defendant's account, and in accordance with the rules of the New York Exchange, which were put in evidence, showing the form of contracts for future delivery, and the other rules governing such dealings; that the contracts were *bona fide,* and contemplated the actual delivery of cotton in every instance. The depositions of Mr. Fielding, president, Mr. Moore, secretary, Mr. Murchison, and other members of the exchange, were read, showing the character of these future contracts, and that hundreds of thousands of bales are annually delivered in New York upon such contracts as the ones shown in this case, in accordance with the rules of the cotton exchange. The defendant testified that he knew nothing of the rules and customs of the New York cotton exchange, or of its methods of dealing; that he knew nothing of the intention of the other parties to the contracts. He was permitted to show, after objection by plaintiffs, by several witnesses residing in Wilmington, that it was not usual for Wilmington men dealing in cotton futures to receive any cotton on these contracts, though they sometimes delivered actual cotton upon them.

The court charged the jury as follows:

SEYMOUR, J. This action is brought by commission merchants to recover of the defendant a balance of account. The final account having been sent by the plaintiffs to the defendant on the thirtieth day of August, 1880, and received by the latter in due course of mail, and no reply having been made to it until the tenth of November, the court holds, as matter of law, that the

same is binding upon the defendant, except so far as he may impeach it for fraud, accident, mistake, or by showing, as he attempts to do in this case, that it includes an illegal consideration.

The contracts in question have been put in evidence, and their construction is matter of law. The parties to them are the defendant, Covington, (an undisclosed principal,) and the third persons, not parties to this action, with whom the plaintiffs (as Covington's agents) contracted on the face of the contracts in their own names, but in reality for the defendant. The court holds that on their face these transactions are legal. The sale of goods to be delivered at a future day is valid, even though the seller has not the goods, nor any other means of getting them than to go into the market and buy them. But if, under the appearance of such a contract, the real intent be merely to speculate in the rise or fall of prices, and the goods are not to be delivered, but one party is to pay to the other the difference between the contract price and the market price of the goods, then the whole constitutes nothing more than a wager, and is null and void. The burden of showing that the parties were carrying on a wagering business rests with the defendant. Before you can find that these transactions were illegal, you must find from the evidence that both parties, the seller and buyer, at the time of making the contract, did so with the intent not to deliver or receive actual cotton, but as a bet on the rise and fall of the market. You must find from the evidence, and not from conjecture, that Covington so intended, and that the other parties to the contract so intended. The purpose of one party alone is not sufficient to render the contract illegal.

You must further find from the evidence that the plaintiffs knew, or had reason to believe, that Covington contemplated nothing but a wagering transaction, and acted for him accordingly. Upon the question of whether the various parties to the future contracts, other than the defendant, intended a gaming contract, it is true that while a series of transactions, perfectly valid on their face, may disclose evidence on the face of the whole, taken together, and in connection with the attendant circumstances, which would justify the jury in finding that they were intended as mere wagers, nevertheless it cannot be true that the simple fact of there being a succession of valid transactions will of itself be evidence to go to the jury, without the aid of surrounding or attendant circumstances. Further, the attendant circumstances must be such as characterize the particular contracts before the court, so distinguished from those characteristic of all dealings in cotton futures.

In this case, after careful reflection, the court can find no evidence of the intent or purpose of the parties who contracted with Covington through his agents. The burden of proof is upon the defendant to show that the contract was a gambling one, and the court feels constrained to charge you that upon this point the burden has not been met.

The jury rendered a verdict for $6,575.88, the amount sued for by plaintiffs.

Motion for a new trial.

*John W. Hinsdale* and *John Devereux*, for plaintiffs.

*Fuller & Snow* and *John D. Shaw*, for defendant.

SEYMOUR, J. E. P. Covington, the defendant, a merchant in Wilmington, North Carolina, instructed the plaintiffs, commission merchants in New York, (one of them a member of the cotton exchange,) to buy cotton for future delivery in New York on his account. The purchases were made, and ultimately covered at a loss of $5,000 by corresponding sales of cotton. One hundred bales of cotton were

actually delivered. The losses were paid by plaintiffs, as defendant's agents, and this action is brought by them to recover the amount so paid. Numerous exceptions were taken to the rulings of the court on questions of evidence, but none of them are material to this motion, which must depend upon the correctness of the charge upon one point, which was decisive of the case. The court charged the jury that it could find no evidence in the case of the intent or purpose of the parties who contracted with Covington through his agents, the plaintiffs, and that, the burden of proof being upon the defendant to show that the contract was a gambling one, the court felt constrained to charge that upon this point the burden had not been met. In view of the numerous adjudications, upon what are known as "futures," in the United States and state courts, and especially since the decision of the cases reported in 108 and 110 U. S., [cited below,] the law governing this species of contracts may be considered as well settled. The contracts in this case were in the form known as Contract A. Under the rules of the cotton exchange this form is prescribed for all contracts for the future delivery of cotton. Contracts in form A have been the subjects of frequent litigation, and their validity is well established.

Under the rules of the New York Cotton Exchange, which were put in evidence by the plaintiffs, a party wishing to operate gives his order to a broker or a commission merchant who is a member of the exchange, and such broker executes the order under its rules, and buys from or sells to a third party who is also a member of the exchange. In the contract the name of principal is not known to the third party. If a loss occurs, the broker is responsible to the party with whom he has contracted, and looks for reimbursement to his principal. The order to operate includes an assumption on the part of the principal of all losses legitimately incurred and paid by the agent in the ordinary and known exercise of his agency, and when the agent pays such losses he does so at the request of his principal, although the only request was the original instructions to buy or sell "futures."

The contracts proved in this case were on their faces legal contracts, and binding upon the defendant, whether or not the parties to them had actual cotton to deliver at the time of making them. This being so, the burden of proof was upon the defendant to show their illegality. To do so it was incumbent upon him to show that, under the guise of a lawful contract, the real intent of the parties was merely to speculate in the rise or fall of prices; and that the goods were not to be delivered, but that one party was to pay the other the difference between the contract price and the market price of the goods at the date fixed for executing the contract. *Irwin* v. *Williar,* 110 U. S. 508; S. C. 4 Sup. Ct. Rep. 160. The instructions given to the jury in the above case and approved by the supreme court were to the effect that the *onus* was on the defendant to establish as a fact that both parties to the transaction understood it to be a wagering contract.

It was incumbent on the defendant to prove "what was the intention of the parties as understood by both of them at the time of entering into the contract." *Grizewood* v. *Blane*, 11 C. B. 526. This being an action by a broker against his principal, it was further incumbent upon the defendant to show that the plaintiff was privy to the unlawful design of the parties. As the case went off upon the intention of the persons with whom the plaintiff made the contracts for futures in behalf of the defendant, it is not necessary to discuss the evidence of the purpose of the parties to this litigation, nor any question of the admissibility of testimony upon that point. What evidence is sufficient to warrant the submission of a question to a jury has been the subject of much discussion. CLIFFORD, J., lays down the following rule:

"Before the evidence is left to the jury there is or may be in every case a preliminary question for the judge; not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed." *Commissioners* v. *Clark*, 94 U. S. 284.

The contracts for the sale and purchase of cotton futures in this case were made with 15 different persons or firms. No two contracts were between the same parties. So there was no evidence of a course of dealing between two parties, and a uniform settlement between them by a payment of differences. No evidence was introduced of the manner of doing business of any of these parties. There was no testimony of any kind in relation to any of these contracts other than the contracts themselves. The only evidence introduced related to cotton futures in general, to the usual custom of persons speculating in them, and to an alleged general expectation or understanding that such contracts were to be settled without an actual delivery of cotton. But Mr. Bennett testified that he had no such understanding, and the answer to the defendant's contention can well be put in the words of MILLER, J., in *Roundtree* v. *Smith*, 108 U. S. 276; S. C. 2 Sup. Ct. Rep. 632:

"Since the plaintiff testifies that he had no such intention, since nothing is proved of the intention of the other parties, and since the contracts were always in writing, we do not think that evidence of what other people intended by other contracts of a similar character, however numerous, is sufficient of itself to prove that the parties to these contracts intended to violate the law, or to justify a jury in making such a presumption."

If this evidence, standing by itself, ought to have any effect, it ought to go further than to the decision of a particular case. It may be further said that it is a matter of common knowledge, familiar to all who are acquainted with business men or who read the newspapers; that is, to all well-informed men. The witnesses who testified to it could only say, "This is generally known." The very essence of the evidence was that it was the common understanding of the community, and the inference that the jury was asked to draw was that, as dealers in cotton generally intended in future contracts merely to bet

upon the market price of cotton, therefore the parties to these contracts must have intended the same thing. Now, if this be true and generally known, the courts are allowed to know it, and to declare it as a presumption of fact. It is idle to require proof in each case of what it is known can be certainly proved by identical evidence in every case. Or if it be true that the conclusion formed by the jury in a number of cases with identical evidence will not be uniform, then the uncertainty is a serious inconvenience, because no business man will know what to expect. In matters that have been often subjects of litigation parties should find it possible to ascertain beforehand whether or not it is safe to sue. The only course open to the courts is to declare that there is a presumption growing out of the known course of business that contracts for the future delivery of goods not owned by the seller are intended as wagers, or to wholly take from the jury the consideration of the evidence when it is, as in this case, merely general evidence, having no specific application to the particular case. To take the former course would be to reverse the almost uniform decisions of the courts of England, and this country from the date of the decision of *Hibblewhite* v. *McMorine*, 5 Mees. & W. 462, (1839,) down to the decisions in volumes of the present year. The latter course is the one taken in the present action, and, as is conceived, is sustained by authority. The *dictum* in the case in 110 U. S. does not affect this position. MATTHEWS, J., says:

"It might be the case that a series of transactions such as that described in the present record might present a succession of contracts perfectly valid in form, but which, on the faces of the whole taken together, and in connection with all the attending circumstances, might disclose indubitable evidences that they were mere wagers. The jury would be justified, in such case, without other evidence than that of the nature and circumstances of the transactions, in reaching and declaring such conclusion." 4 Sup. Ct. Rep. 166.

If the transactions in dispute were all between the same parties, if the uniform custom in prior transactions of the same kind, as well as in those in suit, had been settlements by payments of differences and no real delivery of goods, it might well be that a jury would find, and properly, the conclusive evidence of an illegal contract. Such were the facts in the case of *Grizewood* v. *Blane*, 11 C. B. 526. But in the present controversy there is no succession of contracts; instead, contracts with a succession of different persons. The "attendant circumstances" are not attendant upon the contracts in dispute, but upon all future contracts; the jury are asked to find, not a conclusion applicable to the case, but one applicable to all cases. It was contended that the defendant's instructions to plaintiffs contemplated a gambling contract; that it must be presumed that the latter carried out his instructions, and therefore that he made contracts with the third parties which were wagering in their nature. To this there are three answers: *First,* the instructions to plaintiffs do not bear such a construction; *second,* there is no evidence that such in-

structions were ever communicated to the third parties; *third*, if the plaintiffs intended the contracts made by them for their principal to have been settled in all events by the payment or receipt of balances, it would not have made a particle of difference in his ability to carry out that intent, whether he communicated it to the other parties or not.

It is my conclusion that neither in the evidence submitted, nor in any evidence offered and excluded, is there anything upon which a jury could properly have found a verdict for the defendant upon the point discussed; and upon that point the burden is upon him. A new trial is therefore refused.