## WAITE v. FRANK.

1. Where a note and mortgage were given to plaintiff by defendant for a credit to be used by defendant in the purchase of commodities through plaintiff's exchange on margins, and plaintiff was fully acquainted with the defendant and understood his financial condition, and necessarily knew that defendant could not make payments for the large amounts in which he dealt, and that he was neither a shipper of such commodities nor interested in any business requiring the use of them, such evidence warranted a finding that plaintiff knew that the transaction was for gambling purposes only, and that no intention to receive or pay for the goods was intended.

2. On an issue whether a purchase and sale of commodities was *bona fide*, or a gambling transaction on margins, evidence that in the transaction in dispute the parties have actually settled differences, and have not delivered the commodities bargained for, is admissible, as tending to show the intention at the inception of the contract.

3. On an issue whether transactions were *bona fide*, or simulated contracts for the purchase and sale of commodities on margins, it is immaterial that the transactions were accomplished by formal orders signed by defendant and delivered to plaintiff for purchase and sale, if the real intent of the parties, derived from all the circumstances in the case, shows that the parties intended to adjust the orders by a settlement of differences.

4. On an issue as to whether purchases of commodities on margins were *bona fide* or simulated, it was not error to permit the defendant to

testify as to his intention not to receive or deliver any of the commodities, since such evidence constituted a link in the chain necessary to show the real intention of the parties to the transaction.

5.   Where plaintiff sued to recover on a note given for margins, other persons, who were accustomed to deal with plaintiff, on his exchange, and who knew how such exchange was conducted, could properly testify as to the custom of dealings at such exchange with reference to the payment of the actual purchase price of the commodities, or whether accounts were settled by the payment of differences on the future prices of the commodity purchased.

(Opinion filed June 12, 1901.)

Appeal from circuit court, Lawrence county.   HON. JOSEPH B. MOORE, Judge.

Action by Charles Waite against Alpheus E. Frank.   From a judgment in favor of defendant, plaintiff appeals.   Affirmed.

The facts are stated in the opinion.

*Moody, Kellar & Moody,* for appellant.

The mere fact that the sales were for a future delivery does not even tend to invalidate the contract (8th Am. and Eng. Ency. p. 1004;   Wall v. Schneider, 59 Wis. 352).   The mere fact that a margin was deposited to protect the broker in making purchases and sales does not in anywise show that the contract was illegal. Wall v. Schneider, 59 Wis. 352;   Preston v. Cincinnati R. Co., 36 Fed. Rep. 64.

The rules and regulations of the Chicago Board of Trade are recognized as a valid and legal system or plan of doing business by the laws of Illinois.   Lehman v. Feld, 37 Fed. 850.

The intention of the parties seeking to evade the contract upon the ground that it is a gambling contract, is not in anywise binding upon the other party.   "If the contract is in form legal. it is not enough that it is susceptible of an illegal use, and that one of the parties to it contemplated and designed such illegal use, if the other

had a right to suppose under the circumstances that the contract was to have effect according to its apparent and lawful construction. To invalidate the contract there must be an intent on the part of both parties to gamble." 8th Am. and Eng. Ency. page 1008, and cases cited; Scanlon v. Warren, 48 N. E. 410; Bangs v. Hornick, 30 Fed. Rep. 79; Wall v. Schneider, 59 Wis. 352; Ward v. Vosburg, 31 Fed. Rep. 12; Lehman v. Feld, 37 Fed Rep. 852; Roundtree v. Smith, 108 U. S. 269; Bennett v. Covington, 22 Fed. Rep. 816; Hentz v. Jewell, 20 Fed. Rep. 592.

The burden is upon the defendant to establish the gambling nature and invalidity of the contract. 8 Am. and Eng. Ency. 1010, and case there cited; Bennett v. Covington, 22 Fed. 816; Bangs v. Hornick, 30 Fed. 97; Roundtree v. Smith, 108 U. S. 269; Lehman v. Feld, 37 Fed. Rep. 852.

*Rice & Polley,* for respondent.

There is really but one question in this case: if the dealings between the plaintiff and defendant were bona fide, and there was an intention to deliver the commodities, the plaintiff was entitled to recover and the decision was wrong, but on the other hand, if the deals were mere speculations on the future state of the market, without any intention of delivery, and made by putting up margins on an imaginary future value of the commodity, and without any intention of delivery, then the decision of the court is right and should stand. Jameson *et al.* v. Wallace, 47 N. E. 762; Wakefield v. Farnum *et al.,* 49 N. E. 640; Gardner v. Meeker, 48 N. E. 307.

CORSON, J. This is an action for the foreclosure of a real-estate mortgage given to secure the payment of a promissory note for $1,000 executed by the defendant to the plaintiff. Judgment for the defendant, and the plaintiff appeals. As a defense to the action,

the defendant pleaded that the note in suit was a renewal of a note given by him to the plaintiff in June, 1896, upon the express under-standing that the defendant could have the privilege of dealing to the extent of the $1,000, as margins in differences in the future state of the market in grain and provisions at the plaintiff's place of business, and with the understanding between plaintiff and defend-ant that no grain or provisions were to be delivered on account of any purchases, but that such purchases as might be made were to be mere bets on the future state of the market, which contract, defend-ant claims, is contrary to the policy of the laws of this state, and therefore void. The case was tried to the court without a jury, and it found substantially the following facts: That the defendant executed and delivered the note in controversy; that, at the time of the execution of the note and mortgage, it was understood be-tween plaintiff and defendant that the defendant was to use the mon-ey evidenced by said note in speculating upon the future state of the market in grain, pork, lard, and other commodities, and that no de-livery of the commodities sold and purchased was to be made, but all settlements were to be made upon the rise and fall or fluctuations of the market; that, at the time of the execution of the note and mortgage, plaintiff gave defendant credit for the amount on the Deadwood Stock Exchange, which at that time was under the man-agement of the plaintiff; that between the 27th day of June and the month of November, 1896, the defendant gave orders to the plaintiff from time to time for the purchase of 50,000 bushels of wheat, 60,000 bushels of corn, 1,000 tierces of lard, and 50,000 pounds of ribs, all for pretended future delivery, and all by putting up margins out of the $1,000 credited to the defendant, and with-out any delivery or attempted delivery of the commodities attempted to be purchased, and that during said time defendant also gave

orders for the sale of wheat, corn, lard, and ribs, without any delivery, or offer of delivery, and in all cases of both purchases and sales by the defendant no acceptance or delivery was made or intended to be made, but settlements were made on the fluctuations of the market; that in the month of November, 1896, the defendant was notified that the $1,000 had been exhausted, and that he could not deal further on the exchange without putting up more money; that during the time the defendant was operating, divers other parties were making pretended purchases and sales on said exchange by putting up margins and without delivery and all settlements were made on the rise and fall of the market; that on the 16th day of November, 1896, the defendent extended the note sued on in this action, as a renewal of the original note, without any additional or further consideration; that the rules and regulations of the Chicago Board of Trade were the rules and regulations of the Deadwood Stock Exchange; that all of the options and transactions between the plaintiff and defendant were subject to said rules and regulations, and in accordance therewith; that said $1,000 was used in paying commissions to the plaintiff as broker, and in paying the losses sustained by the said defendant in his operations on the stock exchange. And the court finds for the defendant, and against the plaintiff, on all the issues. From these findings the court concluded, as matter of law, that the contract between plaintiff and defendant was for gambling purposes, contrary to law and public policy, and was illegal and void, and that defendant is entitled to have the mortgage in controversy in this action canceled and set aside. Judgment was thereupon entered in accordance with the conclusions of law. The plaintiff moved for a new trial upon the ground of the insufficiency of the evidence to justify the decision of the court, and that said decision is against law

and also for errors in law occurring at the trial, and duly excepted to by the plaintiff. This motion was overruled, and from the order overruling the said motion, as well as from the judgment, the plaintiff has appealed to this court.

It is assigned as error, among others, that the court erred in its findings as to the agreement between the parties for the reason that they were not supported by the evidence. The plaintiff contends that whatever may have been the intention of the defendant, at the time the loan was made to him and the note executed, as to making and accepting deliveries under his contracts, there is no evidence that the plaintiff did not intend, in making the contracts, to make acceptances and deliveries in accordance therewith, and, unless the plaintiff intended at the time of the execution of the note that no acceptances or deliveries should be made under the contracts thereafter entered into by him for the purchase and sale of the commodities mentioned, then the loan would not be made for the purpose of gambling, and would constitute a valid and legal contract. It is well settled that where a contract for the delivery and sale of wheat, corn, and other commodities in the future is not made with the intention that such commodities shall be received or delivered, but with the understanding, either express or implied, that the transaction shall be settled by the payment of the difference between the contract price and the market price at the time fixed, or some future time, such a contract is a mere wager or gambling contract, and is therefore void. Jamieson v. Wallace, 167 Ill. 388, 47 N. E. 763; Pope v. Hanke, 155 Ill. 617, 40 N. E. 839; Schneider v. Turner, 130 Ill. 28, 22 N. E. 497, 6 L. R. A. 164; Barnard v. Backhaus, 52 Wis. 593, 6 N. W. 252, 9 N. W. 595; Crawford v. Spencer, 92 Mo. 498, 4 S. W. 713; First Nat. Bank v. Oskaloosa Packing Co., 66 Iowa, 41, 23 N. W. 255; Irwin v. Williar, 110 U. S. 499, 4 Sup.

Ct. 160, 28 L. Ed. 225; Ruchizkey v. De Haven, 97 Pa. 202; Flagg v. Baldwin, 38 N. J. Eq. 219, 48 Am. Rep. 308; Wakefield v. Farnum, 170 Mass. 422, 49 N. E. 640; Embrey v. Jemison, 131 U. S. 336, 9 Sup. Ct. 776, 33 L. Ed. 172; Dows v. Glaspel, 4 N. D. 251, 60 N. W. 60; 14 Am. & Eng. Enc. Law (2d Ed.) 609 *et seq.* The intention of the parties in such case may be determined from the nature of the transaction, and from the manner and method of carrying on the business. Jamieson v. Wallace, *supra.* In that case the supreme court of Illinois says: "The intention of the parties may be determined from a variety of circumstances. Among these circumstances, besides the mode of dealing between the parties, is the pecuniary ability of the party purchasing. If the purchases of the party so ordered through the broker are larger in amount than he is able to pay for, it is a strong circumstance indicating that there was no intention to receive the property, but, rather, an intention to settle the difference between the market price and the contract price. Such intention may be also inferred when the party making the purchase never calls upon the party ordering the purchase for the purchase money, but only for margins. It makes no difference whether the real intention is formaly expressed in words or not, if the facts and circumstances in proof show that it was the real understanding that there should be no actual purchase and no delivery or acceptance of the property involved in the contract, but merely an adjustment of damages upon differences." In that case the brokers purchased for defendant, who was sued for losses, railroad stock of the value of $17,500, and it was shown that the defendant was worth only about $7,500; and the court finds from that circumstance, mainly, that the transaction was not intended to be a purchase or sale of stocks, but was intended to be a mere settlement upon differences between the market and the purchase price of the

stocks, and therefore held that it was a gambling contract, and that the defendant was not liable for losses sustained in the transaction. In the case at bar it is clear from the evidence of the defendant that he had no intention at the time he entered into the contract with the plaintiff, or at the times of giving orders for the purchases and sales of wheat, corn, and other commodities, to receive or deliver any of the commodities so purchased or sold; and, while it is true there is no positive evidence that it was not the intention of the plaintiff to receive and make deliveries of the commodities contracted to be bought and sold, yet we are of the opinion that the circumstances under which the loan was made, and the orders to buy and sell given, and from the manner of transacting business on the plaintiff's stock exchange at Deadwood, the court was fully justified in finding that he had no actual intention in buying and selling the commodities ordered by the defendant of receiving or delivering the same, but did intend that settlement should be made upon the difference, between the market and the purchase price of the commodities. The plaintiff and defendant were both residents of Deadwood, and the plaintiff was fully acquainted with the defendant, understood his financial condition, and necessarily knew that he could not make payment for such amounts of commodities, and that he was neither a shipper of such commodities, nor interested in any business requiring the use of the same. "Evidence that a party to a future contract is not financially able to pay for the commodities which he has contracted to buy, or that he has no means with which to buy the commodities which he has contracted to sell, or that he is engaged in such business that he has no facilities for taking and storing the commodity if it needs storage, and that in each of these three cases the facts were known to the adversary party to the contract, is evidence tending to show that the intention of the parties is to gamble.

Evidence that in the transaction in dispute the parties have actually settled differences, and have not delivered the commodities bargained for, is admissible as tending to show that the parties intended at the inception of the contract to settle differences." 14 Am. & Eng. Enc. Law (2d Ed.) 620. See also cases cited in support of the text. It appears in the case at bar that no actual deliveries were made or received, but that all transactions were actually settled by the payment of differences. It is true the plaintiff says he made the purchases through his broker on the Chicago exchange, and that they were so purchased and subsequently sold through the same exchange, and that he understood that he obligated himself to take the wheat and other commodities in case the contracts should be completed. But it appears that the deals were always closed out before the time of the completion of the contracts arrived, all purchases and sales being made for future delivery. What the rules and regulations of the Chicago Stock Exchange were or are, does not appear, as they are not set out in the abstract. But, in our view of the case, they were not material, in any event, as the question is as to the intention of the plaintiff and defendant in making the loan.

It is insisted on the part of the appellant that formal orders were signed by the defendant and delivered to the plaintiff for the purchase and sale of these commodities, and that therefore the transactions. were in legal form and binding upon the parties; but courts attach but little importance to the formalities observed in executing an apparent contract, and look to the real intention of the parties. In Dows v. Glaspel, *supra,* the supreme court of North Dakota used the following language: "But, however perfect the likeness of a gambling transaction to the form and features of a legitimate sale, the legality of the dealings between the parties must rest ultimately upon their honest intention. Illegality is seldom guilty of

the consummate folly of flaunting its defiance of law in the face of public sentiment—of furnishing itself the evidence of its violation of law. To escape the penalties of breaking the law, it will always put on the 'suits and trappings' of honest transactions. Mere wagering contracts invariably wear the garb of bona fide sales. This is common knowledge. Myriads of gambling transactions are daily arranged by two interested brokers, who fatten on the folly of their dupes, in the decent and decorous habliments of lawful business transactions. The *naivete* of a tribunal which in such cases should unquestionably take the semblance for the substance would, indeed, be pitiable, if it did not excite derision and contempt. The courts have always sought to pierce the disguise and ascertain the real intention of the parties." In Melchert v. Telegraph Co. (C. C.) 11 Fed. 193, the court says: "In seeking to ascertain the intentions of parties to such transactions as the one under consideration, it is evident that it will not do to place any great stress upon the mere terms of the contract, or upon their own declarations, whether under oath or not. Parties under such contracts will always seek to give them the form and semblance of legality, and all our experience admonishes us to receive with extreme caution, if not absolute distrust, what parties charged with transactions apparently illegal say respecting the innocency of their own intentions." In Edwards v. Hoeffinghoff (C. C.) 38 Fed. 639, Judge SAGE says: No matter what the form of the contract, no matter how many colorings of realty and genuine dealings are thrown about the transaction, if, piercing all these disguises, the court or jury sees that all these forms are mere shams, and that there was in fact no actual dealings in the article itself, but that forms were adopted as a mere semblance to deceive and evade the law, it is the duty of the court and jury to tear away the disguise, and treat the transaction as it is."

The plaintiff contends that the court erred in permitting defendant Frank to testify as to his intention in the purchase and sale of the commodities, but we are of the opinion that the court committed no error in the admission of this evidence. It was certainly competent for the defendant to show what his intention was at the time he contracted for the loan, and at the times he gave the orders for the purchase and sale of these commodities. Of course, had he failed to show that there was neither an expressed nor implied intention of receiving or delivering the commodities mentioned, on the part of the plaintiff, his note and mortgage would have been binding upon him. But the fact that he had no intention of receiving or delivering any of the commodities constituted one link in the chain of evidence, and if the other evidence in the case, either direct of circumstantial, was sufficient to satisfy the court that the plaintiff entered into the contract with the same intentions, it would be the duty of the court to hold the contract to be a gambling contract, and therefore void.

On the trial three parties who were accustomed to deal with the plaintiff on his stock exchange during the summer of 1896 were called as witnesses on the part of the defendant to testify as to the nature of the transactions, and the method of doing business by the plaintiff on his exchange. One witness, after stating that he resided in Deadwood during 1896, was acquainted with the plaintiff, knew that he was conducting what was called the "Deadwood Stock Exchange," and that he himself gave orders and made purchases of commodities through this exchange, was asked the following question: "State what was the custom of the dealings on this board, if you know, in reference to paying the actual purchase price of the commodities, or paying the differences on the future prices of the commodity so purchased." This question was ob-

jected to on the ground that the written order itself was the best evidence, and that no sufficient foundation had been laid for the introduction of secondary evidence, and also for the reason that it was asking the witness' conclusion as to whether the purchases were ostensible or bona fide purchases, and that it was immaterial and incompetent what the dealings of others were, as it throws no light upon the mutual intention of the parties to this contract. The objection was overruled and exception taken. Similar questions were propounded to the other witnesses, and were objected to on substantially the same grounds. We are of the opinion that this evidence was competent and admissible. The witnesses were dealing on the same stock exchange owned and conducted by the plaintiff, and we think it was clearly competent to show what the general manner of doing business on the part of the plaintiff was during that season. As was said by the supreme court of Illinois in Jamieson v. Wallace. *supra,* "The intention of the parties in such cases may be determined from the nature of the transaction, and from the manner and method of carrying on the business." The learned counsel for the appellant cites the cases of Roundtree v. Smith, 108 U. S. 269, 2 Sup. Ct. 630, 27 L. Ed. 722, and Bennett v. Covington (C. C.) 22 Fed. 816, as sustaining his objections. In the first case evidence was offered as to what the general custom was among parties dealing on stock exchanges. This evidence was held incompetent for the reason that the custom of parties dealing on stock exchanges generally would not prove or tend to prove what the contract was between the parties in that action. But here the questions were not as to what the general custom of parties dealing generally was, but what was the usual method of doing business on the stock exchange conducted by the plaintiff. If dealing in "futures" constituted the ordinary transactions on that exchange, the fair inference would be

that the plaintiff, in making the contract with the defendant, made it with reference to the general method of doing business on his stock exchange. In the case of Bennett v. Covington, *supra,* the evidence offered was similar to that in Roundtree v. Smith, *supra,* and was held incompetent upon the authority of that case. But, if the court erred in admitting this evidence, it was error without prejudice, for the reason that there was ample evidence to support the findings of the court, independently of the evidence we have been considering. In a case tried by a court without a jury, if there is sufficient evidence to sustain the findings, independently of the evidence claimed to have been erroneously admitted, the appellate court will refuse to reverse the judgment. Muller v. Flavin, 13 S. D. 595, 83 N. W. 687; 2 Enc. Pl. & Prac. 556, and cases there cited. The judgment of the court below and the order denying a new trial are affirmed.