### ZELLER v. LEITER.

(Supreme Court, Appellate Division, First Department. June 15, 1906.)

1. GAMING—PURCHASES OF GRAIN—FUTURE DELIVERY.

The actual purchase or the entering into a contract to actually purchase grain to be delivered at a future day is not within Cr. Code Ill. § 130 (Hurd's Rev. St. 1905, p. 698), declaring that whoever contracts to have or give to himself or another the option to sell or buy at a future time any grain or other commodity shall be subject to a fine, etc.

[Ed. Note.—For cases in point, see vol. 24, Cent. Dig. Gaming, § 22.]

2. SAME—INTENT.

In order to invalidate a contract for the purchase of grain for future delivery, both parties must concur in an agreement that the contract is to be settled by a payment of differences between the contract and

market price; the mere undisclosed intention of one of the parties to so treat the contract being immaterial.

[Ed. Note.—For cases in point, see vol. 24, Cent. Dig. Gaming, §§ 22, 26.]

3. SAME—BILLS AND NOTES—CONSIDERATION—PARTIAL INVALIDITY.

Where defendant executed his note for the balance shown to be due the payee by a statement of transactions in grain had by the payee for defendant, such note was not invalididated by the fact that the statement contained one or more illegal items, in the absence of proof that such items changed the balance in defendant's favor.

4. BILLS AND NOTES—CONSIDERATION—ACTIONS—EVIDENCE.

Where, in an action on a note given for the balance shown to be due on a statement of account between defendant and the payee, defendant's counsel expressly stated that an exhibit consisting of 334 daily statements would not change the credit balance in defendant's favor, and that it was not his theory of the case to attempt so to do, it was not error to exclude them.

5. TRIAL—EXCLUSION OF EVIDENCE—ALTERATION OF RULING—REOFFER.

Where, after the exclusion of an exhibit, the court changed its ruling with reference to the issues so as to make such exhibit admissible, it was the party's duty to reoffer the same, in order to entitle him to object to its exclusion.

6. SAME—DIRECTION OF VERDICT—MOTION BY BOTH PARTIES.

Where, in an action on a note given for a balance of account for losses in transactions in grain, both parties moved for the direction of a verdict without any request on defendant's part to go to the jury, the court was entitled to take defendant's testimony, which was unfavorable to himself, in determining whether the transactions were "options," and hence illegal, or were for the actual future delivery of grain, and therefore valid.

7. BILLS AND NOTES—INTEREST.

Where a note payable three years after date provided for interest at 3 per cent. and was not paid at maturity, interest was properly computed in an action thereon at 3 per cent. until maturity, and thereafter at 6 per cent.

Appeal from Trial Term, New York County.

Action by William F. Zeller against Joseph Leiter. From a judgment in favor of plaintiff on a directed verdict, and from an order denying defendant's motion for a new trial, and from an order granting plaintiff an extra allowance of costs, defendant appeals. Affirmed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and HOUGHTON, JJ.

Alton B. Parker, for appellant.
William F. Goldbeck, for respondent.

HOUGHTON, J. The action is upon a promissory note, dated December 15, 1898, given by the defendant to Allen, Grier & Zeller Company, or order, for the sum of $52,021.97, payable three years after date, with interest at the rate of 3 per cent. The complaint alleges, and the answer fails to deny, that for value before maturity the note was transferred by the payees to this plaintiff. The defenses set up in the answer were that the plaintiff was not a bona fide holder, and that he was a member of the firm which was payee of the note, and knew the consideration for which it was given, which was in liquidation of a wagering contract arising out of the taking of options to buy or sell grain at a future time, without any intention that the commodity should

be delivered; all contracts concerning which were specifically declared to be void by the statutes of the state of Illinois, where the transactions were had and the note given, and where it was payable.

It was conceded that the defendant had the affirmative of the issue, and at the close of his proofs both parties rested, and both parties moved for a direction of verdict. The court granted the motion of the plaintiff. The defendant contented himself with taking an exception to this direction, without asking to go to the jury upon any of the questions which he had raised by his proof. From the judgment thus entered the defendant appeals, and insists that he showed in fact that the contract was illegal, and that judgment should have been directed in his favor, and, if that be not so, that error was committed in the exclusion of evidence; and further, that the defendant was not given a fair opportunity to present his defense. The payees of the note were grain brokers, and at the time of the transactions in question the defendant was a large buyer and seller of grain and speculator in that commodity, and they were acting for him. In a statement presented by them to him, covering a period from the 31st day of May, 1898, to the following 14th of November, it appeared that on the former date the brokers had in their hands to the credit of the defendant $263,983.72, and that by various payments and transactions to him and in his behalf that balance, with other credits accruing meanwhile, had been wiped out, and that the defendant was indebted to them in the sum of $52,021.97. Neither the account nor balance was disputed by the defendant, but, being unable to pay, after negotiations, he gave the note in suit, which was accepted.

Some items of "puts" or "calls" or "options" to buy or sell appear in this statement, and defendant insists that he showed that two items charged against him, amounting to more than $250,000, grew out of optional and concededly illegal contracts, and that hence he more than wiped out the balance for which he had given the note in question and therefore was entitled to a direction of verdict in his favor. We do not concur in this view.

The law of Illinois, which the defendant pleaded, and upon which he relies, is found in the Criminal Code of that state, which reads as follows:

"Gambling in grain, § 130. Whoever contracts to have or give to himself or another the option to sell or buy, at a future time, any grain, or other commodity shall be subject to a fine or imprisonment, and 'all contracts made in violation of this section shall be considered gambling contracts, and shall be void.'" Hurd's Rev. St. 1905, p. 698.

Another section declares that all notes and other obligations, the whole or any part of the consideration for which shall be for money won by gambling, shall be void. The principle upon which these laws are founded is not peculiar to the state of Illinois, but that being the place of contract we confine our discussion to the decisions of that state.

The meaning of the term "option" to buy or sell at a future time, as used in the statute, is defined as follows:

"An 'option' is what are called, in the peculiar language of the dealers, 'puts' and 'calls.' A 'put' is defined to be the 'privilege of delivering or not delivering' the thing sold, and a 'call' is defined to be the 'privilege of calling

for or not calling for' the thing bought. 'Optional contracts,' in this sense, are usually settled by adjusting market values as the party having the 'option' may elect. It is simply a mode adopted for speculating in differences in market values of grain or other commodities. It must have been in this sense the term 'option' is used in the statute." Pearce v. Foote, 113 Ill. 228, 55 Am. Rep. 414.

The actual purchase or the entering into a contract to actually purchase grain to be delivered at a future day is not within the prohibition of the statute. Cole v. Milmine, 88 Ill. 349. It is only where the parties have no intention of receiving or delivering it, but intend to settle by the payment of differences between the contract price and the market price, that the contract is a gambling one, and incapable of enforcement. Jamieson v. Wallace, 167 Ill. 388, 47 N. E. 762, 59 Am. St. Rep. 302. Both parties must concur in this agreement, and the undisclosed intention of one to so treat the contract is immaterial and insufficient to invalidate the contract. Scanlon v. Warren, 169 Ill. 142, 48 N. E. 410.

The defendant was sworn, and produced the statement of November 14th, rendered to him by the brokers, showing the balance for which he gave the note in question, and proceeded to prove the items which embraced "puts" and "calls" upon the credit side of the statement, as well as upon the debit, marking with a cross, as transactions of that character, four items upon each side. Thereupon the plaintiff's attorney stated that, "as to all of those items with a cross    *    *    *    we will admit that they were 'puts' and 'calls.' As to the other transactions over wheat, outside of cash transactions, we will admit they were all transactions for the purchase and sale of wheat for future delivery." To this the defendant's attorney responded, "I will accept that." The four items upon the credit side of which the defendant had the benefit in striking the balance amount to $8,541.88, and the four items upon the debit side charged against him amounted to $2,045, making a difference in defendant's favor of $6,496.88.

The trial court held, and we think correctly, that the note was not invalidated because the statement from which the balance was struck contained an illegal item; but that it was incumbent upon defendant to show that those illegal items changed such balance in defendant's favor. The items embraced in the statement were not made up of one transaction, but of many, covering a period of time, and the legal transactions were not made illegal by the fact that some were bad. Owing to the peculiar allegation of defendant's answer, the trial court at first ruled that the defendant must confine his proof as to illegal items to those appearing in the statement, and that he could not go back of the credit of $263,000 appearing therein, and show that the dealings from which that arose were gambling contracts. Subsequently, on reflection, he concluded to change this ruling, and announced to defendant's counsel that he would permit him to go into all the transactions which made up this credit balance of May 31st, and allow him to show, if he could, that by reason of the illegal trades in options this balance should have been greater, and hence that the final balance for which the note was given was affected by such illegal transactions. Thereupon defendant's attorney produced nearly 200 statements, which he claimed showed transactions in "puts" and "calls" for more than a 100,000,000 bushels

of grain. The court suggested that he sort them out, and prepare a statement of debit and credit as to the defendant, so that he and the jury should get some intelligent idea of what they contained. The defendant's attorney announced that this would take time, and the trial was adjourned until the following day, when he came into court, and said he had not yet finished the statement, and the court further postponed the trial until the following day. When the trial was resumed, the defendant attempted to put in a statement, the correctness of which he did not properly prove, and offered bundles containing hundreds of statements made by the brokers to the defendant, without showing in any manner that they had any relevancy to the credit balance of May 31st. In arguing with respect to the admissibility of some of them, the defendant's counsel claimed that they would show contracts for "future delivery of wheat." Finally, the court asked defendant's counsel whether by introducing the large number of daily statements which he presented he could change the May 31st balance in any manner, and he replied that of course he could not; that that was not the theory of the case; and finally, as an excuse, he stated that it was impossible to make any such statement as the court had suggested, because of the destruction of books which had made the separation of the good and the bad transactions a bookkeeping impossibility.

The defendant complains that he was not permitted to introduce what is known as his Exhibits D and F for identification. Exhibit D consisted of the 334 papers which defendant's counsel expressly stated to the court would not change the credit balance in defendant's favor, and that it was not his theory of the case to attempt to do so. Exhibit F was offered in evidence before the court announced that he would permit the defendant to go into any transactions which might affect the balance of May 31st. The defendant had an opportunity to introduce this statement in evidence, and it was his duty to again offer it after the court had changed his ruling, and permitted him to make proof of that character.

The defendant also insists that he should have been permitted to answer whether it was his own intention to accept delivery of wheat. The question does not call for the fact as to whether or not he communicated his intention to the brokers. If he had intention not to accept delivery, and did not communicate that intention to them, the evidence was immaterial. Scanlon v. Warren, supra. The difficulty with defendant's position on the trial was that he assumed, if he showed any illegal item going to make up the balance for which the note was given, that destroyed the note, irrespective of the fact as to whether the balance was affected favorably or unfavorably by such illegal item. This is shown, not only by the course of the trial, but by the ground of his motion for dismissal of the complaint at the close of the proofs.

The defendant also insists that he showed that the $90,000 item and the $164,000 item charged against him in the statement of November 14th arose out of options, and not from the legitimate purchase and sale of wheat. It is true that in some portions of his evidence the defendant uses the word "options." With respect to the $90,000, he distinctly said that it was a contract for the future delivery of wheat, and

in regard to the $164,000 item, he says that the statement with respect to that shows a purchase and sale of September wheat. This would imply a sale for future delivery. The question of fact having been left to the court by the motion of both sides for the direction of a verdict, without any request on the part of the defendant to go to the jury, even if the express stipulation of the defendant admitting that all of the items of the statement except those marked with a cross represented the actual purchase and sale of wheat for future delivery be not taken against him, the court had the right, if it saw fit, to take the testimony of defendant unfavorable to himself in determining whether the transactions were "options," and hence illegal, or for future delivery of grain, and hence valid, and his conclusion in that respect should not be disturbed. Besides, the fact that the defendant gave his note in settlement of the account was a concession that the wheat was actually bought for him. Cole v. Milmine, supra.

We have reviewed the proceedings upon the trial at length because it is asserted that the defendant did not have a fair opportunity to present his defense. On the contrary, we think the court granted him liberal opportunity. The trial was suspended to enable him to present his documentary evidence to meet the changed ruling in his favor. The defendant's counsel was apprised of the views of the court, and had ample opportunity to meet them. It is said that the attorney was inexperienced. This impression is not created by the record. He had his theory of the defense and persisted in it, and does not appear to have been swerved from it either by the rulings of the court or any remarks addressed to him.

We have not adverted to the pleadings and the failure to deny that the note was transferred for value because plaintiff's counsel conceded upon the trial that if the note was bad as to the payee it was bad as to the transferee. The account was presented to the defendant, and undisputed by him, and he voluntarily gave his note in liquidation of it, and we do not find that any error was committed upon the trial which calls for a reversal of the judgment which the plaintiff obtained. Interest was computed on the note at 3 per cent. until its maturity, and thereafter at 6 per cent., and it is claimed that only 3 per cent. should have been allowed, notwithstanding default in payment. The contract having been violated by nonpayment, interest thereafter ran by way of damages at the rate allowed by law. Ferris v. Hard, 135 N. Y. 355, 32 N. E. 129.

The judgment and orders should be affirmed, with costs. All concur.