In re Estate of Frank Athenstadt, deceased
Doyle Bros., Plaintiffs in Error, v. Mary M. Bartelme, Administratrix, Defendant in Error.

Gen. No. 16,415.

1. CONTRACTS—*what does not preclude defense of gambling consideration.* The defense that the consideration for a note was gambling in character representing transactions in grain cannot be defeated by showing that the payee in conducting such transactions was merely acting as the agent of the maker.

2. GAMBLING—*when transactions in grain are.* If it is understood between the parties to a transaction in grain that there shall be no actual receipts or deliveries but only a settlement upon differences in price there can be no liability of one to the other.

Contested claim in court of probate. Error to the Circuit Court of Cook county; the HON. THOMAS G. WINDES, Judge, presiding. Heard

in the Branch Appellate Court at the March term, 1910.   Affirmed.
Opinion filed April 24, 1912.

D. MONCRIEFFE KIRTON, for plaintiffs in error.

FRANK WENTWORTH SWETT, for defendant in error.

MR. JUSTICE McSURELY delivered the opinion of the court.

This case arises out of a claim filed by Doyle Bros., hereinafter called claimants, in the Probate Court of Cook County on a promissory note for $1,600, payable to claimants and executed by one Frank Athenstadt, hereinafter called defendant, who died October 1, 1906.

The claim came on for hearing before the judge of the Probate Court, and after hearing was disallowed and dismissed by said court.   Claimants appealed to the Circuit Court where, upon trial, a verdict for claimants was rendered by the jury for $874.   A new trial being granted by the court, the case was tried before his Honor Judge Windes of the Circuit Court, a jury having been waived.   The court upon this trial found the issues for the Estate of Frank Athenstadt and entered judgment against the claimants for costs.   The present writ of error is sued out to reverse the judgment so entered.

The defense is that said note was given in pursuance of a gambling transaction and that therefore said transaction is invalid, and the note, being given without consideration, is void.   The note is dated January 22, 1904, payable one year thereafter, with interest at six per cent. per annum.   The defendant was a barber by trade, and was actively engaged at his trade during the entire two years from 1902 to 1904, when the grain transactions making up the consideration of the note were entered into.   During this time William J. Doyle, senior member of the claimant firm, continually visited the barber shop of said

defendant and was shaved by him. The defendant began his dealings with claimants in January, 1902, and did business with them until about the time or shortly after the date of the note which was given in settlement of accounts up to the date thereof. William Doyle's testimony is that "the consideration of the note was for money on grain that he bought and sold; the differences on the price of grain that he bought and sold." The note is made up of such differences. During these two years the defendant went through the form of buying 334,000 bushels of wheat from claimants, and sold the same amount. After he had bought and then sold the same amount, Doyle Bros. rendered him a statement showing the differences. No statements were ever rendered for the purchases themselves, but only after the same amount which had been purchased was sold. During the two years defendant paid claimants margins from time to time to cover a part of these differences. These payments were made in small items of five and ten dollars. Doyle testifies, referring to defendant: "He was dealing in margins. He never took any of this grain on delivery; simply bought on margins; that is the theory on which we dealt with him." Not a bushel of the 334,000 bushels of wheat was ever delivered or received by either party.

The trial court made two findings of fact: First, that Frank Athenstadt "was financially unable to purchase and pay for the grain shown by the evidence to have been contracted for by him with the claimants, Doyle Brothers, and that under all the circumstances of this case, this inability to pay for said grain by said Athenstadt was known to the claimant, Doyle Brothers." And second, "that neither Frank Athenstadt nor Doyle Brothers intended to purchase and deliver, and to sell and deliver, the grain shown by the evidence to have been bought and sold by them respectively."

We are of the opinion that from the direct testimony of William Doyle, and from all the circumstances surrounding the parties to this transaction, the trial court was clearly justified in making these findings of fact.

In Jamieson v. Wallace, 167 Ill. 388 (396), the Supreme Court, after referring to a large number of authorities, said: "An examination of the authorities above referred to will show, that the intention of the parties may be determined from a variety of circumstances. Among these circumstances, besides the mode of dealing between the parties, is the pecuniary ability of the party purchasing. If the purchaser of a party, as ordered through a broker, are larger in amount than he is able to pay for, it is a strong circumstance indicating that there was no intention of receiving the property, but rather an intention to settle the difference between the market price and the contract price. Such an intention may be also inferred where the party, making the purchase, never calls upon the party, ordering the purchase, for the purchase money, but only for margins. It makes no difference, whether the real intention is formally expressed in words or not, if the facts and circumstances in proof show, that it was the real understanding, that there should be no actual purchase and no delivery or acceptance of the property involved in the contract, but merely an adjustment of damages upon differences."

It is claimed by plaintiffs in error that claimants, while making contracts with the defendant for the purchases and sales in question, were acting for certain firms on the Board of Trade, and the intention of such firms with respect to receipts and deliveries of grain must be shown, and in the absence of any showing it will be presumed that actual receipts and deliveries were intended. We do not believe this to be the law applicable to this case; but the correct rule

is as announced in Weare Commission Co. v. The People, 209 Ill. 528 (542), which is as follows: "Plaintiff in error cannot relieve itself of responsibility upon the ground that it acted merely as agent for its customers in these unlawful transactions. In Pearce v. Foote, 113 Ill. 228, we said: 'There is and can be no such thing as agency in the perpetration of crimes or misdemeanors, or, indeed, in the doing of any unlawful act. All persons actively participating are principals.' 'If parties to speculative dealings intend merely to gamble in the rise and fall of prices, and the broker is privy to the unlawful design of the parties, and brings them together for the very purpose of entering into an illegal agreement, he is *particeps criminis.*' (8 Am. & Eng. Ency. of Laws, —1st ed.—pp. 1011, 1012)."

Even though the contracts might be entirely valid as between the claimants and the firms on the Board of Trade, because of having been entered into in accordance with the rules of the Board prohibiting gambling transactions, nevertheless between the claimants and the defendant the validity of such contracts depends upon the mutual intent of claimants and defendant. If it was understood between themselves that there should be no actual receipts or deliveries of grain, but only a settlement upon differences in price, there can be no liability of one to the other. (See Weare Commission Co. v. The People, *supra.*)

In our opinion the trial court correctly found this note to have been given for no valid consideration, and its judgment will be affirmed.

*Affirmed.*