[No. 24153. Department Two. August 14, 1933.]

THE QUINN SMITH COMPANY, *Respondent*, v. DAVID LITVIN *et al., Appellants.*[1]

*Harry J. Kuen,* for appellants.
*Allen, Froude, Hilen & Askren,* for respondent.

[1]Reported in 24 P. (2d) 425.

BLAKE, J.—The plaintiff is engaged in the business of buying and selling stocks and bonds for customers. The defendant opened an account with plaintiff for the purchase of stock on August 5, 1929, the account continuing active until the crash came in the latter part of October of that year.

This action was brought to recover $1,556.32, the balance claimed to be due on the purchase price of stocks bought by defendant. Answering, the defendant set up two affirmative defenses: (1) That the agreements to purchase stock were wagering contracts, that the parties contemplated settlement of each transaction on the rise or fall of the market, and that it was never intended that the stocks be actually delivered; (2) that, on October 23rd, defendant ordered plaintiff to sell twenty-five shares of Cities Service, which plaintiff failed to do.

The court found that the agreements were not wagering contracts, but that plaintiff failed to sell the twenty-five shares of Cities Service, as ordered. Judgment was entered in favor of plaintiff for $674.98. This amount was arrived at by deducting from the amount prayed for the value of the Cities Service stock at the time it could and should have been sold pursuant to defendant's order. The court found that, under the conditions of the market on October 23rd, the Cities Service stock could not have been sold earlier than October 30th, and fixed its value as of that date.

Defendant appeals, presenting two assignments of error: (1) That the court erred in not finding that the transactions had between him and plaintiff were wagering contracts; and (2) that the court erred in not fixing the value of the Cities Service stock as of October 24th, instead of October 30th.

In transactions for the purchase and sale of stock for future delivery, a wagering contract exists

when (a) the parties intend, at the time the contract is made, that, at the time fixed for delivery, one party will pay the difference between the contract price and the market price on the delivery date; (b) the parties, at the time of making the contract, have no intention to deliver, receive or pay for the stock. If these elements are present, the contract is a wager and unenforceable. *Gettys v. Newburger,* 272 Fed. 209. But the transaction may be closed by a sale or setoff, and the contract will not necessarily be banned as a wager. *Board of Trade v. Christie Grain & Stock Co.,* 198 U. S. 236.

Nor is a transaction to be stamped as a wager when only one party to the contract understands and means it to be. *Bibb v. Allen,* 149 U. S. 481. There are, however, certain recognized indicia, from which such intent on the part of the party not admitting the transaction to be a wager may be inferred. These are financial inability of the purchaser to carry out the contract; manner of carrying out the transactions; the fact that the seller may have called on the purchaser for margins; the fact that settlement is actually made upon the difference between the contract and market prices. *Coughlin v. Ferro,* 164 Wash. 90, 1 P. (2d) 910; *Mohr v. Miesen,* 47 Minn. 228, 49 N. W. 862; *Jamieson v. Wallace,* 167 Ill. 388, 47 N. E. 762, 59 Am. St. 302. The transaction, however, carries the presumption of legality, and the burden to prove it rests on him who asserts otherwise. *Coughlin v. Ferro, supra; Irwin v. Williar,* 110 U. S. 499.

All that we can find in the record in support of appellant's contention that the transactions were wagers are his own declaration that he so intended them to be, and the fact that sales were made to offset his purchases. There is no evidence to justify the inference that respondent expected to settle on the difference in

contract and market price, or that it did not intend to deliver the stock contracted for. The respondent's version of the transactions was that the stock was sold on the basis of one-third of the contract price down and one-tenth of the remainder payable monthly. The first transactions occurred August 5th. They involved commitments for the purchase of stocks in the approximate amount of $2,600. Appellant at that time paid on account approximately $1,000. At intervals thereafter he made cash payments of $720 on account. At the time of the transactions, he was earning $200 a month.

It seems to us that his commitments were at no time disproportionate to his financial ability to carry them out. He contends that margins were demanded and that the payments on account, just referred to, were made to cover such demands. He himself testified, however, that his transactions showed a profit at all times. It therefore seems to us that the making of the additional payments support respondent's version of the transactions, rather than appellant's; that they were payments on account, and not to cover margins. We find nothing in the transactions, either in their inception or settlement, that justifies the conclusion that they were wagering contracts.

The second assignment of error involves a dispute as to whether the appellant ordered the sale of the Cities Service stock on October 23rd. The respondent contended that no order of sale was given. The court, however, found against respondent on that issue. We cannot say that the evidence preponderates against the finding.

Appellant contends here that, the court having found that the order of sale was given on October 23rd, he should be allowed its value as of October 24th. There was evidence to the effect that, during the week

following October 23rd, Cities Service stock could be sold on the New York market only by delivery of the stock certificate within twenty-four hours after sale. Under ordinary conditions, stock from places distant from New York may be sold on "seller's seven," which means that the stock certificate will be accepted in New York at any time within seven days after the sale. Evidence was offered tending to show that this method of trading in Cities Service stock was suspended during the week subsequent to October 23rd. The court, therefore, concluded that, under these conditions, the respondent, because of his failure to carry out the order to sell, was not chargeable with the market value of the stock on October 24th, but was chargeable with the value of the stock as of October 30th.

Obviously, this date was fixed on the theory that it would take that long to deliver the stock in New York. Since the only evidence in the record relative to the time necessary to deliver stock in New York after sale in Seattle was of the practice under the "seller's seven," the court was warranted in concluding that it would reasonably take seven days to deliver the stock.

Appellant contends that respondent should have sold the stock on the San Francisco market. The evidence is conflicting as to whether the stock could have been sold there at all during the week following October 23rd. Taking as a whole the evidence on this issue, we think the court was fully warranted in holding that the earliest date the stock could have been sold, after the order of sale was given, was October 30th on the New York market.

The judgment is affirmed.

MILLARD, MAIN, TOLMAN, and STEINERT, JJ., concur.