[No. 29014. Department Two. March 2, 1944.]

FERRIS & HARDGROVE, *Respondent*, v. F. W. BUFF, *Appellant*.[1]

[1]Reported. in 146 P. (2d) 331.

C. E. H. *Maloy,* for appellant.

*Harroun & Shidler* and *Ballinger, Hutson & Boldt,* for respondent.

MALLERY, J.—The plaintiff brought this action, as a broker, to recover the sum of $6,499.23 from the defendant for margin which plaintiff had advanced to the brokerage firm of Merrill Lynch, E. A. Pierce & Cassatt, hereinafter called Pierce & Co. for convenience. From a judgment upon the verdict of a jury, the defendant appeals.

The United National Corporation is a holding company. It does not do an independent business but manages and directs its subsidiary corporations, one of which is Ferris & Hardgrove, the respondent herein. The appellant, Mr. Buff, was vice-president, treasurer, and director in the United National Corporation and was director or treasurer in a number of the subsidiary corporations, but was not an officer of respondent corporation. He was a certified public accountant, and had supervision over the accounting of all of the companies and had supervision and

control over respondent's margin accounts, with power to close out under-secured accounts.

In October, 1938, Mr. Buff opened a margin account with the respondent in the name of R. I. Funk, for the purpose of dealing in wheat futures. One McBurney had charge of such accounts for respondent but was under the supervision of Mr. Buff. Since respondent was not a member of the Chicago Board of Trade, it placed all such orders through Pierce & Co., which was a member. For this purpose, it had a running account with Pierce & Co. and made regular remittances to them as required. The interest of respondent and Pierce & Co. in such transactions was limited to the commissions earned.

Mr. Buff allowed his account to become under-secured. A loss occurred, and Pierce & Co. closed it out and called upon Ferris & Hardgrove to account for the loss in the regular course of business. It being the practice for Pierce & Co., in executing respondent's orders, to look only to respondent for liabilities in connection therewith, respondent paid the loss and brought this action to recover from Mr. Buff.

The appellant advances several contentions for non-liability, the chief of which is that the action will not lie because it arose out of a gambling transaction. He marshals many facts to sustain his contention that he never intended actually to buy or sell wheat but only to gamble on the market, and we think that this intention on his part must be conceded. However, he does not contend nor is there any evidence to the effect that he did not always have the right, had he chosen to exercise it, to require delivery of the wheat so far as respondent and Pierce & Co. were concerned. There is no hint in the record but what, when he bought wheat, it was bought for him in the regular way and the same is true with regard to sales.

While it is true that wagering contracts are unenforcible, yet the first requisite of a wagering contract is that it must be so considered by both parties in such transactions as are here involved. Where the intention of

gambling is limited to one party, it is not a wagering contract. As was stated in the case of *Quinn Smith Co. v. Litvin,* 174 Wash. 129, 24 P. (2d) 425:

"In transactions for the purchase and sale of stock for future delivery, a wagering contract exists when (a) the parties intend, at the time the contract is made, that, at the time fixed for delivery, one party will pay the difference between the contract price and the market price on the delivery date; (b) the parties, at the time of making the contract, have no intention to deliver, receive or pay for the stock. If these elements are present, the contract is a wager and unenforcible. *Gettys v. Newburger,* 272 Fed. 209. But the transaction may be closed by a sale or setoff, and the contract will not necessarily be banned as a wager. *Board of Trade v. Christie Grain & Stock Co.,* 198 U. S. 236.

"Nor is a transaction to be stamped as a wager when only one party to the contract understands and means it to be. *Bibb v. Allen,* 149 U. S. 481. There are, however, certain recognized indicia, from which such intent on the part of the party not admitting the transaction to be a wager may be inferred. These are financial inability of the purchaser to carry out the contract; manner of carrying out the transactions; the fact that the seller may have called on the purchaser for margins; the fact that settlement is actually made upon the difference between the contract and market prices. *Coughlin v. Ferro,* 164 Wash. 90, 1 P. (2d) 910; *Mohr v. Miesen,* 47 Minn. 228, 49 N. W. 862; *Jamieson v. Wallace,* 167 Ill. 388, 47 N. E. 762, 59 Am. St. 302. The transaction, however, carries the presumption of legality, and the burden to prove it rests on him who asserts otherwise. *Coughlin v. Ferro, supra; Irwin v. Williar,* 110 U. S. 499.

"All that we can find in the record in support of appellant's contention that the transactions were wagers are his own declaration that he so intended them to be, and the fact that sales were made to offset his purchases. There is no evidence to justify the inference that respondent expected to settle on the difference in contract and market price, or that it did not intend to deliver the stock contracted for."

But the appellant contends that the respondent knew that it was his intention to gamble in wheat futures because of certain disclosures he made to McBurney, the

agent of respondent, and that this notice of his intention to the agent is notice to the principal. While the evidence upon this point is in dispute and the jury had the right to, and did, find against the appellant in this respect, yet we think the result would be the same. This is not the case of a party dealing with a principal through an agent, but is rather an action by a principal against its own agent because of his wrongdoing. The appellant had the authority and it was his duty to close out his account in the name of Funk whenever it became under-margined. He did not do so, with the result that a loss was sustained.

It is no defense to appellant's neglect of duty to say that McBurney was also derelict in not making a full disclosure, if such was the fact.

Appellant contends that the court's instruction No. 5 was erroneous upon the ground that the transactions were gambling transactions as a matter of law, and that there is no dispute in the facts about the notice to McBurney of that fact. If the intention on the part of the appellant alone were sufficient to make the transaction a wagering contract, his complaint with regard to the instruction would be well-founded. As it is, however, the instruction is more favorable to him than to the respondent and there is no error which he may claim therein.

The appellant further contends that the mere carrying of his account in the name of Funk did not cause the respondent any loss or damage, and that the respondent knew or should have known that the appellant was the owner of the Funk account. Even if true, that is without significance in the instant case, where the respondent's complaint is that appellant used his position to allow his account to be under-margined, which resulted in respondent's obligation to pay Pierce & Co. for the loss.

Respondent's use of the name Funk instead of his own can avail him nothing. He is still an agent, with the duties inherent in that relationship, and not a stranger. His liability is the same as if he had carried the account in his own name and, by reason of his position and in dereliction

of his duty, had permitted it to become under-margined to respondent's damage.

Appellant contends that the evidence does not show any duress by which he forced McBurney to allow the account to become under-margined. This is immaterial. It was appellant's own duty not to permit the account to become under-margined and he must answer for his own dereliction.

Appellant further contends that respondent failed to establish the necessary elements of fraud. He also objected to evidence introduced to show that appellant did not inform certain officers of the company that the Funk account was his account. Fraud was not alleged. Again it may be stated that this is not an action, between strangers, for fraud, but an action of a principal against its agent to recover losses sustained by reason of his dereliction.

Appellant again complains of the court's instruction No. 5, which defines an agent's duty to his principal. It correctly states the law and was germane to the issue. The appellant's choice in bringing the action for dereliction of an agent instead of an action of fraud, was within its right, and it is not the right of the appellant to insist that the case be tried upon his own theory.

Appellant further asks for a judgment in the amount of $2,604.31, the value of certain collateral which the respondent applied to mitigation of its loss. This contention is without merit.

The judgment is affirmed.

SIMPSON, C. J., BLAKE, GRADY, and JEFFERS, JJ., concur.